## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | |
|---|---|
| Nekita Antonio White, | ) |
|     Petitioner, | ) |
| | ) |
| v. | )     1:13cv804 (TSE/TRJ) |
| | ) |
| Director, Virginia Department of | ) |
| Corrections, | ) |
|     Respondent. | ) |

### MEMORANDUM OPINION

Nikita Antonio White, a Virginia inmate proceeding pro se, has filed a petition for a writ

of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his

conviction of multiple offenses following a bench trial in the Circuit Court of the City of Suffolk.

Respondent has filed a Rule 5 Answer and a Motion to Dismiss with a supporting brief and

exhibits. Petitioner was given the opportunity to file responsive materials pursuant to Roseboro

v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(K), and he has filed various

documents in response. Accordingly, this matter is now ripe for disposition. For the reasons that

follow, respondent's Motion to Dismiss must be granted, and the petition must be dismissed.

### I. Background

On July 11, 2011, petitioner was convicted of two counts of threatening to bomb or burn,

as well as one count each of making an annoying telephone call and violating a protective order.

Case Nos. CR10001419-00 through -1422-00.[1] Petitioner appealed the convictions to the Court

of Appeals of Virginia, raising the sole claim that the evidence was insufficient to sustain the

convictions of threatening to bomb or burn. In its opinion affirming the convictions, the Court of

---

[1]The conviction of violating a protective order was entered on a plea of guilty. T. 9-10.

Appeals described the evidence as follows:

> [T]he evidence proved that Tarina Parker and appellant have a son and on December 28, 2009, Parker was at her mother's house. Parker testified she heard her mother, Annie White, on the telephone and Annie White sounded upset. Parker testified she took the telephone from Annie White, she spoke to the caller, and the caller cursed and threatened to kill her and to bring her house down. Parker testified appellant was the caller and the caller ID showed COMMVA. Parker testified she hung up, she called the number on caller ID, appellant answered, and she hung up. Parker testified appellant immediately called Annie White's house, appellant told her not to call him, and appellant threatened to kill her. Parker testified she was afraid when appellant threatened her and she was not sure where he was when he made the calls. Parker testified she hung up and called the police. Officer Protzeller arrived, she answered two phone calls from appellant, and appellant repeatedly called Annie White's house while Officer Protzeller was there. Parker testified appellant called thirty-two times that day. Parker had a protective order against appellant. Parker testified she never threatened to shoot appellant and she did not call appellant first on December 28, 2009.
>
> Annie White testified she answered the telephone and she heard someone cursing and threatening to kill Parker. Annie White testified she did not recognize the male voice and the caller hung up. Annie White testified she checked caller ID, called the number, and the man from the prior phone call answered. Annie White testified the man stated, 'I'm going to kill you, and burn your house up cause you her f-ing mother.' Annie White testified she did not recognize the voice and Parker took the telephone from her. Annie White testified she was afraid and believed appellant would follow through on his threats.
>
> Audrey White, appellant's mother, testified when appellant arrived home on December 28, 2009, he was very upset. Audrey White testified Parker called on December 28, 2009 and she spoke to Parker. Audrey White testified she told appellant that Parker had called and appellant yelled and was angry. Audrey White testified she heard appellant yelling and screaming while on the telephone.
>
> Appellant testified he was at the courthouse trying to get a protective order against Parker because she had called his cell phone. Appellant testified the court gave him Parker's number and he admitted he called Parker, but he explained that he called Parker to ask her not to

shoot him. Appellant denied threatening to kill Parker or to burn the house. Appellant denied calling Parker thirty-two times and testified he called her one time on December 28, 2009. Appellant admitted he spoke to Officer Protzeller.

White v. Commonwealth, R. No. 1426-11-1 (Va. Ct. App. Jan. 18, 2012); Resp. Ex. 1.

Petitioner sought further review by the Supreme Court of Virginia, and his petition was refused

on June 28, 2012. White v. Commonwealth, R. No. 120277 (Va. June 28, 2012); Resp. Ex. 2.

On May 8, 2013, White filed a petition for a state writ of habeas corpus in the trial court

in which he raised the following claims *verbatim*:

1.  I'm innocent of the two counts of threaten to burn and bom[b]. There's no evidence to support these claims of me making any threat to burn or bom[b]. They have no evidence to state these claims on. I'm actually innocent of those charges. They have no proof and can't produce any.

2.  My accusers are lying and lied to the authorities. There is no scientific evidence that can prove that I made threats to burn and bom[b]. Tarina Parker and Annie L. White lied to the courts and to the authorities.

3.  Material fact. They have no evidence and cannot produce any. They have no facts to state there [sic] grounds. I'm innocent of the allege[d] allegations.

4.  They have me falsely and unlawfully imprisoned. I didn't commit any threats to burn or bom[b] on December 28, 2009 and it's against the law to have a[n] innocent person in prison.

By Order dated July 9, 2013, White's state habeas application was denied. Specifically,

the court held that: 1) claim one was not cognizable on habeas review because the same claim

had been denied on the merits on direct appeal; 2) the portion of claim two challenging

witnesses' credibility claim two was not cognizable because it had been raised and denied on

direct appeal, and the portion alleging perjury was barred pursuant to the rule of Slayton v.

Parrigan, 215 Va. 27, 29-30, 205 S.E.2d 680, 682 (1974); 3) claim three was a reiteration of

claim one and was not cognizable for the same reason; and 4) claim four stated no cognizable

basis for habeas relief. White did not appeal that result.

On April 2, 2013, White filed the instant federal petition. Here, he makes the following

claims *verbatim*:

1.     I have the freedom of speech, press and religion. Who are the
       Commonwealth of Virginia to just make this claim of me making
       threats to burn and bomb. They have no evidence whatsoever and
       can't produce any evidence of me making any threats to burn or
       bomb. Pet. at 6.

2.     What is so hard to understand [is] that my accusers falsely accused
       me of threats to burn and bomb. It's no uncommon for someone to
       make false statements under oath in a court room. I don't have to lie
       on myself. My accusers are just trying to destroy my character.
       Because I never even spoke to Annie L. White over the telephone at
       all on Dec. 28, 2009. And she took false witness against me in court
       and told lies directly towards me without reason she does not even
       know what me and Tarina L. Parker were talking about over the
       telephone, but the Suffolk Police Department does. Pet. at 7-8.

3.     There's no scientific evidence. The Commonwealth of Virginia are
       not respecting my word and they are just taken the sides of my
       accusers. Reality is they have no grounds on which to state their
       claim of me making two counts of threaten to burn and bomb the
       Commonwealth of Virginia are being ignorant to the facts. They
       have no evidence. Pet. at 9.

4.     My accusers are not even type of authorities. Tarina L. Parker and
       Annie L. White lied to the judges and attorneys and authorities of the
       Commonwealth of Virginia. I know this to be a fact come on people
       I was not born yesterday. They are taken advantage of the criminal
       justice system people of this nature they have no right to falsely
       accuse me of crimes that I didn't do. I don't have a problem such as
       to me making threats to burn down houses. And the only reason I had
       any contact with Ms. Parker is because she claims to have a son by
       me other than that me and Ms. Parker would have never talk to each

4

other.  Pet. at 10-11. [2]

As noted above, respondent has filed a Motion to Dismiss the petition with a supporting brief and exhibits, and petitioner has filed various documents in reply. Dkt. 10, 13. Accordingly, this matter is now ripe for disposition.  For the reasons that follow, respondent's Motion to Dismiss must be granted, and the petition must be dismissed, with prejudice.

## II. Exhaustion and Procedural Default

Before bringing a federal habeas petition, a state prisoner must first exhaust his claims in the appropriate state court. See 28 U.S.C. § 2254(b); Granberry v Greer, 481 U.S. 129 (1987); Rose v. Lundy, 455 U.S. 509 (1982); Preiser v. Rodriguez, 411 U.S. 475 (1973).  To comply with the exhaustion requirement, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  Thus, a petitioner convicted in Virginia must first have presented the same factual and legal claims raised in his § 2254 application to the Supreme Court of Virginia on direct appeal, or in a state habeas corpus petition. See, e.g., Duncan v. Henry, 513 U.S. 364 (1995); Kasi v. Angelone, 300 F.3d 487, 501-02 (4th Cir. 2002).  As respondent acknowledges, petitioner's claims are exhausted.

Where a state court has made an express determination of procedural default, the state

---

[2]As is readily apparent, petitioner's claims are far from a model of clarity.  Under other circumstances, a § 2254 applicant acting pro se would have been allowed an opportunity to file an amended petition, to attempt to state his position with greater precision.  Here, however, the Court has become familiar with petitioner's pleadings, and was of the opinion that such an opportunity would have been futile. See, e.g., White v. Carlens, Case No. 1:10cv174 (TSE/IDD) (dismissed for failure to state a claim March 22, 2010); White v. Dunn, 1:10cv349 (TSE/IDD) (dismissed for failure to state a claim May 2, 2011); White v. Franklin, et al., Case No. 1:10cv472 (TSE/IDD) (dismissed for failure to state a claim May 17, 2010); White v. Jones, et al., Case No. 1:10cv799 (TSE/TRJ) (dismissed for failure to state a claim August 23, 2010).

court's finding is entitled to a presumption of correctness, provided two foundational requirements are met. See 28 U.S.C. § 2254(d); Clanton v. Muncy, 845 F.2d 1238, 1241 (4th Cir. 1988). First, the state court must explicitly rely on the procedural ground to deny petitioner relief. See Ylst v. Nunnemaker, 501 U.S. 797, 802-03 (1991); Harris v. Reed, 489 U.S. 255, 259 (1989). Second, the state procedural rule used to default petitioner's claim must be an independent and adequate state ground for denying relief. See Harris, 489 U.S. at 260; Ford v. Georgia, 498 U.S. 411, 423-24 (1991).

In this case, the portion of claim two where petitioner alleges perjury by trial witnesses was expressly barred on state habeas review pursuant to Slayton, 205 S.E.2d at 680. The Fourth Circuit has held consistently that "the procedural default rule set forth in Slayton constitutes an adequate and independent state law ground for decision." Mu'Min v. Pruett, 125 F.3d 192, 196-97 (4th Cir. 1997). Therefore, petitioner's perjury claim likewise is procedurally defaulted in this federal proceeding.

Federal courts may not review barred claims absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. Harris, 489 U.S. at 260. The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. See Coleman v. Thompson, 501 U.S. 722, 753-54 (1991); Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990). Importantly, a court need not consider the issue of prejudice in the absence of cause. See Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995), cert. denied sub. nom Kornahrens v. Moore, 517 U.S. 1171 (1996). In his replies to respondent's motion to dismiss, petitioner makes no showing of any of these factors.

Consequently, the portion of claim two where petitioner alleges that trial witnesses committed perjury is procedurally barred from consideration on the merits.

### III. Merits Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas petition, a federal court may not grant the petition based on the claim unless the state court's adjudication is contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Whether a state court decision is "contrary to" or "an unreasonable application of" federal law requires an independent review of each standard. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination runs afoul of the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Id. at 413. Under the "unreasonable application" clause, the writ should be granted if the federal court finds that the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. Importantly, this standard of reasonableness is an objective one. Id. at 410. Under this standard, "[t]he focus of federal court review is now on the state court decision that previously addressed the claims rather than the petitioner's free-standing claims themselves." McLee v. Angelone, 967 F.Supp. 152, 156 (E.D. Va. 1997), appeal dismissed, 139 F.3d 891 (4th Cir. 1998) (table).

### IV. Analysis

In his cognizable federal claims, petitioner alleges that the Commonwealth had "no

evidence whatsoever and can't produce any evidence of me making any threats to bomb or burn;" his "accusers falsely accused [him] of threats to burn and bomb;" there was "no scientific evidence" presented; and "Tarina L. Parker and Annie L. White lied to the judges and attorneys and authorities of the Commonwealth of Virginia." Pet. at 6, 7, 9, 10-11. Distilled to its essence, then, petitioner's claim is that because his accusers lied and no corroborating "scientific evidence" was presented, the evidence was insufficient to sustain the convictions.

On federal habeas review, the standard for a claim challenging the sufficiency of the evidence supporting a state conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). The federal court is required to give deference to findings of fact made by the state courts, and this presumption of correctness applies to facts found by both trial and appellate courts. 28 U.S.C. § 2254(d); see Sumner v. Mata, 449 U.S. 539, 546-47 (1981); see also Wilson v. Greene, 155 F.3d 396, 405-06 (4th Cir. 1998) (citing Wright v. West, 505 U.S. 277, 292 (1992) for the holding that a federal habeas court is prohibited from either "consider[ing] anew the jury's guilt determination or "replac[ing] the state's system of direct appellate review"). Instead, the federal court must determine only whether the trier of fact made a rational decision to convict. Herrera v. Collins, 506 U.S. 390, 402 (1993).

In this case, as reflected in the Court of Appeals' opinion quoted above,[3] Tarina Parker

---

[3]Because the Courts of Appeals' opinion was the last reasoned state court decision on the claim at issue, its reasoning is imputed to the Supreme Court of Virginia, which refused further appeal without explanation. Ylst, 501 U.S. at 803.

testified that petitioner called her at her mother's residence on the day in question and threatened to kill her and to burn her house down. T. 13-14, 24. In all, White placed 32 calls to the residence that day, and the witness produced a paper on which she had recorded the number of calls she had received. T. 16; Comm. Ex. 1. Annie White, Tarina Parker's mother, testified that she initially answered the telephone when petitioner called, and she heard him "yelling and cussing about killing Tarina." T. 25. After petitioner hung up and Ms. White dialed the number back, "all of a sudden he said, 'You a B. I'm'a kill you and burn your house up 'cause you her f-ing mother." T. 26. The witness felt "mad and angry" at that "because I done moved three times, and I keep moving, he keep finding me." T. 26-27. The testimony of a police officer who could not be present for trial was stipulated to be that the officer responded to Ms. White's home as the incident was ongoing, and while she was there she took two calls from a person identified as Nikita White. Thereafter the telephone continued to ring with calls originating from the same number that Tarina had identified. T. 33. Petitioner's mother testified on his behalf, T. 34-45, and petitioner offered his own testimony. T. 46-61. At the conclusion of the proceedings, the court found as follows:

> Well, the case, just like so many cases, it boils down to credibility when one group says one thing happened, another group says another thing happened, so you have to be very careful in what you're listening to.

> Well, in this case what the officer did is very important. Mr. White denies making all these calls. But what he did, does admit doing, is talking to Officer Protzeller twice. Well, according to Commonwealth's 1 those are calls 29 and 30, so he admits talking. And the second thing that swings this case in favor of the Commonwealth is what his mother testified to, and that was that he was yelling in the phone, screaming in the phone, and he was upset.

> There is no question he was out of control that day. He may not have

9

> wanted to say what he said, but I think he said exactly what these ladies said he said. I'm going to find him guilty of all four [sic] offenses and order a presentence.

T. 71-72

It is apparent at this juncture that when the evidence presented at trial is viewed in the light most favorable to the Commonwealth, a rational trier of fact could have found petitioner guilty of threatening to bomb or burn the homes of Annie White and Tarina Parker. Jackson, 443 U.S. at 319. Petitioner argues here that those witnesses "falsely" accused him, but the trial court found their testimony to be credible, and it is not the role of a federal court to review the credibility of witnesses. United States v. Hobbs, 136 F.3d 384, 391 n.11 (4th Cir. 1998); United States v. Reavis, 48 F.3d 763, 771 (4th Cir. 1995); United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989). Instead, the federal court is bound by credibility determinations made by the state court trier of fact. United States v. Arrington, 719 F.2d 701, 704 (4th Cir. 1983), cert. denied, 465 U.S. 1028 (1984). Petitioner's argument that the convictions cannot stand because no "scientific evidence" was presented is also unavailing, because Jackson does not require any specific type of evidence. Instead, it holds only that the evidence introduced must have been adequate to allow a rational trier of fact to find the defendant guilty beyond a reasonable doubt. See, e.g., Inge v. Procunier, 758 F.2d 1010, 1013 (4th Cir. 1985) (circumstantial evidence satisfies Jackson so long as it was sufficient to permit a rational trier of fact to "have found the essential elements of the crime beyond a reasonable doubt"); Arrington, 719 F.2d at 705 (uncorroborated testimony of a single witness can satisfy Jackson). Since the Virginia courts' rejection of petitioner's challenge to the sufficiency of the evidence was based on a reasonable determination of the record facts and was in accord with clearly established federal law, Jackson,

10

supra, the same result must obtain in this federal action.  Williams, 529 U.S. at 412-13.

## V. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss must be granted, and this petition must be dismissed with prejudice.  An appropriate Order shall issue.

Entered this _____10th_____ day of _____March_____ 2014.

Alexandria, Virginia

_____
T. S. Ellis, III
United States District Judge

11